# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Darrius D. Greene,

                Plaintiff,      Case No. 16-cv-14240

v.                                       Judith E. Levy
                                       United States District Judge

Robert LeDuc,

                                       Mag. Judge Patricia T. Morris

                Defendant.

_____/

# OPINION AND ORDER DENYING OBJECTIONS [20], ADOPTING REPORT AND RECOMMENDATION [19], GRANTING MOTION FOR SUMMARY JUDGMENT [14], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [1]

Before the Court are plaintiff Darrius Greene's objections to the Magistrate Judge's Report and Recommendation that recommends granting defendant Robert LeDuc's motion for summary judgment. (Dkt. 20.)

For the reasons set forth below, plaintiff's objections are denied, the Report and Recommendation ("R&R") is adopted, and the motion for summary judgment is granted.

## I. Background

A detailed recitation of the background of this case is included in the Magistrate Judge's R&R (Dkt. 19), and is adopted here. That said, this case results from plaintiff allegedly being denied his mail by prison officials, and retaliation from those officials after he complained.

Plaintiff alleges that in June of 2015 he was not receiving mail from family and friends "who sent mail for certain." (Dkt. 1 at 7.) He wrote letters to the mailroom, and also to defendant via the paper kite system to ask why he was not receiving his mail.

On August 18, 2016, plaintiff spoke with "Couns[elor] Herron" who told him that he would look into the situation. (Dkt. 1 at 8.) When he spoke with Herron on August 22, 2016, Herron said "your problem is in the hands of the upper echelon. I don't want anything to do with it from this point forward. If I were you I would leave it alone. But if you insist, write a paper kite to [defendant]." (*Id*.) Plaintiff then sent another kite to defendant. (*Id*.)

On August 25, 2016, plaintiff confronted defendant about the situation, stating that if he didn't receive his mail he would be "forced to grieve." (Dkt. 1 at 8-9.) Defendant allegedly replied that he had seen the

2

kites and that if he continued to send them, "Pretty soon you['re] gonna get a response that will change your life. Not in a good way." (Dkt. 1 at 9.) The next day, defendant allegedly sent an email "to the entire [prison] population" saying plaintiff was a suspected drug smuggler and that his family was sending other prisoners money. (*Id.*) The prisoners then began harassing him and asking him for drugs and money. (*Id.* at 11.) After a group ambushed plaintiff in the yard, he was transferred to Gus Harrison Correctional Facility. (*Id.*)

Following these events, plaintiff initiated the grievance process pursuant to the Michigan Department of Correction ("MDOC") policy. Under this policy, No. 03.02.130 (effective July 9, 2007), after a prisoner files a Step I grievance, the form is logged and assigned a unique identifying number, and the Grievance Coordinator must determine whether to accept or reject the grievance "within 15 business days after receipt." (Dkt. 14-2 at 5 (paras. W, X).) A prisoner may file a Step II grievance "if s/he is dissatisfied with the response . . . or if s/he did not receive a timely response." (*Id.* at 6 (para. BB).) The Grievance Coordinator must respond "within 15 business days after receipt." (*Id.* (para. CC).) A prisoner may file a Step III grievance "if s/he is dissatisfied

3

with the response . . . or if s/he did not receive a timely response." (*Id*. at 7 (para. FF).) The Grievance and Appeals Section must investigate and respond to the Step III grievance "in a timely manner," (id. (para. GG)), and the grievance process "shall generally be completed within 120 calendar days unless an extension has been approved in writing." (*Id*. at 5 (para. S).)

In this case, plaintiff submitted two Step I grievances on September 8, 2016. (Dkt. 1 at 20; Dkt. 14-3 at 3; Dkt. 20 at 15–16.) They were denied, and he submitted a Step II grievance on October 6, 2016. (Dkt. 1 at 20; Dkt. 20 at 18–19.) Plaintiff argues he never received a response, and so sent a Step III grievance on October 10, 2016. (*Id*.)

Plaintiff alleges that he then received the Step II responses, and submitted two additional Step III grievances. (Dkt. 1 at 20.) And all four Step III grievances were returned to him on November 16, 2016, with two of them stamped October 13 and 20, 2016. (*Id*.) Records reflect that the prison returned two Step III grievances on October 20, and 31, 2016 for failure to include the Step I and II documents. (Dkt. 14-3 at 3–4.) Plaintiff claims he did not know he was required to include the Step I and II documents, and, in any event, could not have done so with the first two

4

Step III grievances because he did not have the documents at that time. (Dkt. 1 at 20.) Ultimately, the Step III responses were mailed to plaintiff on December 2, 2016. (Dkt. 14-3 at 3.) The record does not reflect if or when plaintiff received them.

On December 1, 2016, plaintiff filed this complaint stemming from the holding of his mail and the email that was sent to the prison population. (Dkt. 1 at 17.) He argues that defendant violated his First and Eighth Amendment rights. Specifically, defendant violated his rights to "Freedom of Speech, Privileged Correspondence, and . . . Freedom of Expression" by withholding his mail. Further, defendant violated the Eighth Amendment by "Placing [his] life in danger, creating a hostile living environment, disclosing [his] personal information to other prisoners, resulting in injury and mental anguish." (*Id.* at 4.)

On February 6, 2017, defendant filed a motion for summary judgment, arguing that plaintiff failed to exhaust all administrative remedies. (Dkt. 14.)

In the R&R, the Magistrate Judge recommends that defendant's motion for summary judgment be granted "[b]ecause plaintiff filed his complaint before completing the grievance process." Plaintiff filed the

complaint before receiving the Step III responses and before 120 days had lapsed since filing the Step I grievance. (Dkt. 19 at 9–10.)

Plaintiff filed an objection to the Magistrate's R&R on June 5, 2017, claiming that prison officials rendered the administrative remedies of grievance procedure functionally unavailable to him. (Dkt. 20 at 8.)

## II. Legal Standard

A magistrate judge's Report and Recommendation is made pursuant to 28 U.S.C. § 636(b)(1). "[T]his recommendation has no presumptive weight," and the district judge "has the responsibility of making the final determination." *Patrick Collins, Inc. v. John Does 1-21*, 286 F.R.D. 319, 320 (E.D. Mich. 2012). If a party objects to part or all of the R&R, the district judge must review *de novo* those parts to which the party has objected. *Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002); Fed. R. Civ. P. 72(b)(3). *De novo* review "entails at least a review of the evidence that faced the Magistrate Judge." *Lardie*, 221 F. Supp. 2d at 807. After reviewing an R&R, a court may "accept, reject, or modify the findings or recommendations." *Id*.

## III. Analysis

Plaintiff objects to the R&R on the grounds that he complied with the MDOC grievance policy as far as possible. Specifically, he submitted the only copy of the Step I grievances he had with his Step II grievances, and because he never received a timely response, he had no additional copies to submit with his Step III grievances. (Dkt. 20 at 3.) Further, because defendant improperly failed to respond and therefore prevented him from complying, defendant cannot be granted summary judgment. (*Id*. at 10.)

Under the Prison Litigation Reform Act ("PLRA"), "No action shall be brought . . . by a prisoner . . . until such administrative remedies as are available are exhausted." *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1856 (2016) (quoting 42 U.S.C. § 1997(e)(a)). In other words, a prisoner "may not bring any action absent exhaustion of available administrative remedies." *Id*. (internal quotations and punctuation omitted). The exhaustion requirement is "mandatory" and "a court may not excuse a failure to exhaust, even to take such circumstances into account." *Id*. (citing *Miller v. French*, 530 U.S. 327, 337 (2000)).

The Sixth Circuit has "analyz[ed] whether the facility rendered these remedies unavailable," in which case the exhaustion requirement would be excused. *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner must make "affirmative efforts to comply," and the court will then analyze "whether these efforts to exhaust were sufficient under the circumstances." *Id.* (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). And "[w]hether a process is 'available' under the PLRA frequently turns on whether a grievance procedure was available on its face even if the prisoner subjectively believes that the procedure would be futile." *Reynolds v. Smith*, Case No. 11-cv-277, 2015 WL 1968867, at *9 (S.D. Ohio May 1, 2015) (quoting *Napier*, 636 F.3d at 224).

### *Objection 1: Substantial Compliance*

Plaintiff objects to the R&R, claiming that he substantially complied with the grievance process, and should therefore be excused from any alleged failure.

Here, plaintiff was permitted to file Step I, II, and III grievances pursuant to the policy. But he had not received the Step III grievance responses prior to filing this lawsuit on December 1, 2016. Further, as the R&R highlights, less than the 120 days allotted for the entire

8

administrative process had elapsed before the complaint was filed. In other words, the Step III responses were due at any time prior to January 6, 2017.

Given these facts, plaintiff did not substantially comply with the grievance process. Instead, he failed to complete the administrative process prior to filing the lawsuit, and failed to exhaust the available administrative remedies.

### *Objection 2: Unavailability of Administrative Remedies*

Plaintiff next objects to the R&R on the ground that he was effectively prevented from exhausting his administrative remedies because the Step III grievances were rejected for failure to include the Step I and II grievance documents.

First, he argues that he did not include the paperwork because he was not informed he needed to include the Step I and II paperwork. But "[a] plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy." *Napier*, 636 F.3d at 221 n.2 (internal citations omitted).

Next, he claims not to have received responses to the Step II grievances and therefore did not have copies to submit with the Step III

9

grievances. But plaintiff admits in the complaint that he did receive responses to the Step II grievances, just not before he filed his first two Step III grievances. Thus, he had the paperwork prior to filing the second set of Step III grievances, and admits in the complaint that he submitted this documentation with those grievances. And the record shows that the Grievance and Appeals Section mailed responses to the Step III grievances on December 2, 2016. In sum, the record demonstrates that there is no genuine dispute of material fact that the administrative remedies process was functionally available to plaintiff.

Accordingly, the R&R correctly recommended a finding that plaintiff failed to exhaust his administrative remedies, and plaintiff's objections are denied.

## IV. Conclusion

For the reasons set forth above, plaintiff's objections (Dkt. 20) are DENIED.

The Report and Recommendation (Dkt. 19) is ADOPTED.

Defendant's motion for summary judgment (Dkt. 14) is GRANTED, and the complaint (Dkt. 1) is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: July 31, 2017  
Ann Arbor, Michigan

s/Judith E. Levy  
JUDITH E. LEVY  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2017.

s/Shawna Burns  
SHAWNA BURNS  
Case Manager